1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRADY K. ARMSTRONG,

11          Plaintiff,                    No.  2:11-cv-0965 GEB KJN P

12       vs.

13   SILVIA GARCIA, et al.,               ORDER AND

14          Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner, proceeding without counsel, and is presently housed in

17   the California Substance Abuse Treatment Facility and State Prison, Corcoran (SATF).  In this

18   civil rights action, plaintiff challenges events that took place at High Desert State Prison

19   ("HDSP") in 2004, against defendants who were employed at HDSP.  On February 4, 2013,

20   plaintiff filed a document styled, "Notice of Motion and Motion for 'Posthaste Protection Order,"

21   the Defendants . . . are to cause 'Harm, Murder, Injury' to Plaintiff's Person from the Hands of

22   Other Officials, and Prisoners in Direct Reprisal/ Retaliation for Plaintiff's Use of the CCR Title

23   15 and Filing Lawsuits Against Prison Officials."  (Dkt. No. 63.)

24   I.  Legal Standards for Injunctive Relief

25          Although plaintiff styles his motion differently, it effectively seeks a temporary

26   restraining order, a preliminary injunction, or both.  A temporary restraining order is an

1

1   extraordinary and temporary "fix" that the court may issue without notice to the adverse party if,

2   in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable

3   injury, loss, or damage will result to the movant before the adverse party can be heard in

4   opposition." See Fed. R. Civ. P. 65(b)(1)(A).  The purpose of a temporary restraining order is to

5   preserve the status quo pending a fuller hearing.  See generally, Fed. R. Civ. P. 65; see also, E.D.

6   Cal. L. R. ("Local Rule") 231(a).  It is the practice of this district to construe a motion for

7   temporary restraining order as a motion for preliminary injunction,[1] particularly when, as here,

8   the motion has been served on the adverse party.  Local Rule 231(a).

9           A preliminary injunction represents the exercise of a far reaching power not to be

10  indulged except in a case clearly warranting it.  Dymo Indus. v. Tapeprinter, Inc., 326 F.2d 141,

11  143 (9th Cir. 1964).  "The proper legal standard for preliminary injunctive relief requires a party

12  to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable

13  harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

14  injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir.

15  2009), quoting Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 375-76 (2008).  In cases

16  brought by prisoners involving conditions of confinement, any preliminary injunction "must be

17  narrowly drawn, extend no further than necessary to correct the harm the court finds requires

18  preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C.

19  § 3626(a)(2).

20          In addition, as a general rule this court is unable to issue an order against

21  individuals who are not parties to a suit pending before it.  Zenith Radio Corp. v. Hazeltine

22  Research, Inc., 395 U.S. 100 (1969).

23  ////

24

---

25      [1] See, e.g., Aiello v. OneWest Bank, 2010 WL 406092, *1 (E.D. Cal. 2010) (providing
    that "'[t]emporary restraining orders are governed by the same standard applicable to preliminary
26  injunctions'")(citations omitted).

1  II.  Plaintiff's Allegations

2          Plaintiff states that the

3          officials here at C4-Building second watch C/O Mullier on
4          1/12/13, beg[a]n spreading rumors/lies that plaintiff call[ed] him a
           "(RACIST)" verbally, to his inmates inmate(s) worker(s) who then
           approached plaintiff's cell housing door at C4-111, threaten to
5          plaintiff to stop writing-up correctional staff C/O Muller.

6  [sic] (Dkt. No. 63 at 1.)  Plaintiff claims he has suffered several strokes which has left him with

7  slurred speech and severe and painful medical complications with his mobility.  Plaintiff lists six

8  federal court cases, including the instant one, which he claims "all" concern "state employees'

9  intentional acts" and "violent campaign of retaliation/harassment subjected upon plaintiff due" to

10 his use of the regulations to report state employees' "acts of misconduct."  (Dkt. No. 63 at 3.)

11 Plaintiff claims he has suffered several violent attacks upon his person from "defendants."  (Id.)

12          Plaintiff asks the court to provide safe housing in which plaintiff may retain his

13 typewriter; to order prison officials not to subject plaintiff to further acts of reprisals; pay $1

14 million each to plaintiff's son and other family members in the event of plaintiff's death, or

15 $250,000.00 for any injury reported to the district court; and investigate the following state

16 employees:  CCI Hernandez, C/O Muller; C/O Tucher; C/O Davis; C/O Pelayo; C/O Vasquez;

17 C/O Gonzalez.  (Dkt. No. 63 at 2.)

18          Finally, at the top of the Proof of Service By Mail form, plaintiff typed:  "Due to

19 the threat on plaintiff's life, I am unable to leave cell housing and attempt to obtain copies.  Need

20 court order to be posthaste rehoused in another yard facility off SATF/Corcoran.  I am lower

21 level custody in two months should I live. . . ."  (Dkt. No. 63 at 5.)

22 III.  Analysis

23          The purpose of preliminary injunctive relief is to maintain the status quo.

24          A preliminary injunction may not issue when is it not of the same
           character as that which may be granted finally and when it deals
25          with matter outside the issues in the underlying suit.

26 11A Wright & Miller § 2947 (2010).

3

1          As set forth above, the instant action is proceeding against defendants at HDSP,

2     not prison officials at SATF, including any of those named in plaintiff's motion, and alleges

3     Eighth Amendment violations concerning medical treatment at HDSP in 2004.  The instant

4     action does not address claims of retaliation or harassment.  Thus, the allegations contained in

5     the instant motion will not be given a hearing on the merits at trial.

6          In the instant motion, plaintiff suggests a threat of injury.  See City of Los Angeles

7     v. Lyons, 461 U.S. 95, 101-102 (1983) (plaintiff must show "real and immediate" threat of

8     injury, and "past exposure to illegal conduct does not in itself show a present case or controversy

9     regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects.").

10    However, plaintiff's threats of injury are vague and unclear.  It is unclear from plaintiff's

11    allegation whether it was C/O Muller or other prison officials at SATF who allegedly spread

12    rumors that plaintiff called "him" a racist.  Although plaintiff lists the names of specific persons

13    he wants the court to investigate, he does not include specific allegations as to any alleged threat

14    each person made, if any.  Plaintiff vaguely references "defendant(s)," rather than identify the

15    individual who allegedly verbally threatened plaintiff.  And, although plaintiff claims in the title

16    of his filing that these "defendant(s)" "are to cause 'harm, murder, injury' to plaintiff," plaintiff

17    includes no specific allegations setting forth such threats in his filing.  Rather, plaintiff claims

18    inmate workers approached his cell and verbally threatened plaintiff to "stop writing-up

19    Correctional Staff C/O Muller."  (Dkt. No. 63 at 1.)  Such a verbal threat, as articulated by

20    plaintiff, does not appear to place plaintiff in imminent danger, as the tenor of his filing suggests.

21    (Dkt. No. 63 at 2, 5.)

22          Further, plaintiff does not address the third or fourth elements, i.e., the balancing

23    of equities and public interest concerns.  Absent a showing sufficient to find harm to plaintiff,

24    there is nothing to tip the balance of equities in plaintiff's favor.

25          Moreover, because plaintiff's allegations concern witnesses and events at SATF,

26    plaintiff's motion is more appropriately filed in the Fresno Division of the Eastern District of

4

1    California.[3]  The court has reviewed plaintiff's pending cases, both in Sacramento and Fresno,

2    and none of them name a C/O Mullier or Muller as a defendant.  Two of plaintiff's pending cases

3    in the Fresno Division pertain to events at SATF, but it is unclear whether plaintiff's motion is

4    appropriate in either of them.  Armstrong v. Anderson, Case No. 11-1996 BAM (allegations

5    concerning intentional food tampering); Armstrong v. Etchebehere, Case No. 12-1498 GBC

6    (allegations concerning religious items).[4]

7            In any event, there are no allegations tying the alleged recent events at SATF to

8    the defendants named in this action, who were employed at HDSP in 2004, or to the claims

9    proceeding herein.  Plaintiff cannot, by this motion, enjoin persons who are not defendants in the

10   underlying action, based on claims that are not set forth in the operative complaint.  "Unrelated

11   claims against different defendants belong in different suits[.]"  George v. Smith, 507 F.3d 605,

12   607 (7th Cir. 2007).

13           For all of these reasons, plaintiff's motion for preliminary injunction should be

14   denied without prejudice to its renewal in the Fresno Division of the Eastern District of

15   California.

16           IT IS HEREBY ORDERED that the Clerk of the Court send plaintiff the form for

17   filing a civil rights action in the Fresno Division of the Eastern District of California; and

18           IT IS RECOMMENDED that plaintiff's February 4, 2013 motion for injunctive

19   relief be denied without prejudice.  (Dkt. No. 63.)

20   _____

21      [3]  Indeed, it appears plaintiff intended to file it in the Fresno Division, as the caption of
     his filing references "Fresno."  (Dkt. No. 63 at 1.)  However, plaintiff used the caption from this
22   Sacramento case, 2:11-cv-0965 GEB KJN P.  (Id.)

23      [4]  Plaintiff's other pending cases are:
         Armstrong v. Yates, 1:10-cv-2380 LJO DLB (events at Salinas Valley State Prison
24   ("SVSP") in Coalinga)
         Armstrong v. Hedgpeth, 1:11-cv-0761 LJO GSA (events at SVSP)
25       Armstrong v. Young, 2:12-cv-0123 KJN (events at HDSP)
         Armstrong v. Martinez, 1:12-cv-0631 GSA (events at SVSP)
26       Armstrong v. Agurralde, 1:12-cv-1622 GBC (events at SVSP)

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within fourteen days after service of the objections.  The parties are

7  advised that failure to file objections within the specified time may waive the right to appeal the

8  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED:  February 6, 2013

10

11                                                    _____

12                                                    KENDALL J. NEWMAN
                                                      UNITED STATES MAGISTRATE JUDGE

13  arms0965.pi

14

15

16

17

18

19

20

21

22

23

24

25

26